IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ChipBLASTER, INC., and<br>GREGORY S. ANTOUN,<br><br>    Plaintiffs,<br><br>  v.<br><br>MIKE KENNEY TOOL, INC.,<br>d/b/a COOLJET SYSTEMS,<br><br>    Defendant.<br><br>AND RELATED CROSS-COMPLAINT | THIS DOCUMENT IS BEING<br>ELECTRONICALLY FILED<br><br>Civil Action No. 04-250 Erie<br><br>**JUDGE MCLAUGHLIN** |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CLARIFICATION OF THE COURT'S JUNE 29, 2005 ORDER

**I. INTRODUCTION**

Defendant Mike Kenney Tool, Inc., dba CoolJet Systems ("CoolJet") moves this Court for reconsideration of its June 29, 2005 Order denying CoolJet's motion for partial summary judgment of noninfringement because of the "need to correct a clear error of the law . . . ." *See General Instrument Corp. v. Nu-Tek Elecs. & Mfg., Inc.*, 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998), *aff'd*, 197 F.3d 83 (3rd Cir. 1999).[1]

In denying CoolJet's motion for partial summary judgment, the Court found that a genuine issue of material fact exists as to whether the accused products were "programmed with data related to the flow area of the [tool] orifice." The Court did not consider, however, whether the accused products determine the "speed of the pump motor based on coolant pressure and the flow area of the [tool] orifice" as expressly required by the claims. The Court's failure to consider this key limitation of the claim constitutes a clear error of law. This error led the Court

---

[1] The Court in *General Instruments* held that reconsideration of a previously denied motion is appropriate where there is (1) evidence not previously available; (2) an intervening change in controlling law; or (3) a need to correct a clear error of law or to prevent a manifest injustice. *See also Evans v. United States,* 173 F. Supp. 2d 334, 335 (E.D. Pa. 2001); *Environ Prods., Inc. v. Total Containment, Inc.*, 951 F. Supp. 57, 62 (E.D. Pa. 1996); *Cohen v. Austin,* 869 F. Supp. 320, 321 (E.D. Pa. 1994).

to reach the wrong result on CoolJet's motion for partial summary judgment of noninfringement. Accordingly, CoolJet's motion for reconsideration should be granted by finding as a matter of law that the accused products do not infringe the patent-in-suit, either literally or under the doctrine of equivalents.

Should the Court deny CoolJet's motion for reconsideration, CoolJet respectfully submits that the Court should clarify its June 29, 2005 Order by providing claim construction for the following claim language:

> "[A] computer determines the speed of the pump motor based on coolant pressure and the flow area of the orifice means of the tool."

Claim construction is the province of the trial judge, and is required in a patent infringement case. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (in banc), *aff'd*, 517 U.S. 370 (1996). It also serves to give the parties a better understanding of the strengths and weaknesses of their respective cases. This will not only reduce the issues at trial, but will be instrumental in the parties' efforts to obtain swift resolution through settlement.

## II.   ARGUMENT

On a motion for summary judgment, the moving party must produce evidence establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The absence of a genuine issue of material fact may be demonstrated by pointing out to the Court, as CoolJet has done, that "there is an absence of evidence to support the nonmoving party's case" on issues where the "nonmoving party bears the burden of proof." *Id.* at 325, 106 S.Ct. at 2554. ChipBlaster, as the patent owner, has the burden of proving infringement. Thus, ChipBlaster cannot avoid summary judgment unless it can establish a genuine issue of material fact as to whether the accused product includes every limitation of the claim. *S. Bravo Sys., Inc. v. Containment Techs Corp.,* 96 F.3d 1372, 1376 (Fed. Cir. 1996). ("To avoid summary judgment [the patentee] was required to proffer evidence that [the accused product] contained **every claim element** either exactly or by a substantial equivalent."; emphasis added)

In the instant case, the record is completely devoid of any probative evidence that the accused products determine the "speed of the pump motor based on coolant pressure and the flow area of the [tool] orifice." This Court, having found that there was an issue of fact with respect to a portion of the claims allegedly infringed, overlooked this separate and distinct limitation of the claim for which there is no genuine issue of material fact, and therefore, summary judgment of noninfringement is appropriate.

### A. The Manner In Which the Speed Of The Motor Is Determined In The Accused Products Is Not Disputed

The manner in which the speed of the motor is determined in the accused products is not disputed by the parties. The accused products use a pressure transducer to monitor coolant pressure and provide a feedback signal to a variable frequency drive. The variable frequency drive uses the feedback signal to vary the speed of the motor, and hence the pump, to maintain a constant pressure. (Kenney Decl., ¶ 5)[2]. If a change in coolant pressure occurs because of a change in the orifice diameter of a new tool, the feedback signal from the pressure transducer causes the variable frequency drive to adjust the speed of the motor to maintain a constant coolant pressure delivered by the pump to the tool. (Ference Decl., Exh. G, Depo. at p. 114:12-15)[3].¶

ChipBlaster does not contend that the motor speed is determined in any other fashion. ChipBlaster's technical expert explains the operation as follows:

> [A]s the flow area of the orifice changes with the change of the tool used to cut or drill metal, the CoolJet system receives a signal from the transducer that is directly related to the flow area of the orifice, and varies the drive frequency, to cause the motor to spin faster or slower, and the pump to increase or decrease output . . . .

---

[2] The Declaration of Mike Kenney in Support of Defendant's Motion for Partial Summary Judgment ("Kenney Decl."), Docket No. 19, filed February 24, 2005.

[3] The Declaration of Stanley Ference in Support of Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment ("Ference Decl."), Docket No. filed May 23, 2005.

(Adelman Decl, ¶ 14)[4]. In other words, a signal from the pressure transducer varies the drive frequency to cause the motor to spin faster or slower, and the pump to increase or decrease output. The signal from the pressure transducer may very well be sensitive to changes in orifice diameter, but it is the signal from the pressure transducer alone that varies the drive frequency to the motor, and hence determines the speed of the motor. This is undisputed.

"Because the relevant aspects of the accused device's structure and operation are undisputed in this case, the question of whether [the CoolJet system] infringes the claims of . . . [the] patent turns on the interpretation of those claims." *See Johnston Worldwide Assocs, Inc. v. Zebco Corp.,* 175 F.3d 985, 988 (Fed. Cir. 1999), *citing Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed. Cir. 1996) ("Where the parties do not dispute any relevant facts regarding the accused product, but disagree over possible [claim interpretation], the question of literal infringement collapses into claim construction and is thus amenable to summary judgment.").

### B. The Claim Language Is Clear And Unambiguous

The claim language is clear and unambiguous. It requires a computer that determines the speed of the pump motor based on two separate and distinct inputs: (1) the coolant pressure and (2) the flow area of the orifice. In order to satisfy this claim limitation, the computer must use both the feedback signal from the pressure transducer, and the size of the orifice diameter to determine the speed of the pump motor. Simply using the feedback signal from the pressure transducer to adjust the speed of the pump motor, as urged by ChipBlaster, is insufficient to meet the claim language. This is true even if the coolant pressure is sensitive to changes in the orifice diameter.

ChipBlaster's position is simply untenable in view of the plain and ordinary meaning of the claim. Had the claim simply called for a computer that determines the speed of a motor pump based on "the flow area of the [tool] orifice" alone, then a computer using coolant pressure to determine motor speed could arguably meet this claim limitation if the coolant pressure was indeed sensitive to changes in orifice diameter. However, by including the term "coolant

---

[4] The Declaration of William Adelman in Support of Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment ("Adelman Decl."), filed May 23, 2005.

pressure" as an additional requirement to determine the motor speed, the inventor clearly intended to exclude "coolant pressure" from the definition of "flow area of the [tool] orifice." In other words, the inventor would not have added the term "coolant pressure" to the claim if he believed that the term "flow area of the [tool] orifice" already encompassed "coolant pressure." ChipBlaster's attempt to judicially redraft its patent claims to suit its litigation needs is tantamount to reading express claim limitations right out of existence. *See Glaxo Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1566 (Fed. Cir. 1997) (holding that "all limitations [of a claim] are material."). Whether ChipBlaster had to include this language in the claims is not relevant; having done so, it must live with the language it has chosen.

### C.     ChipBlaster Disputes The Clear And Unambiguous Claim Language

CoolJet has always contended that the claim language is clear and unambiguous. However, this does not mean that the claim language is undisputed. Accordingly, the Court should look to the patent specification to determine the meaning of the claim. *North American Vaccine v. American Cyanamid Co.,* 7 F.3d 1571, 1576 (Fed. Cir. 1993) *cert. denied,* 511 U.S. 1069 (1994). "The specification contains a written description of the invention that must enable one of ordinary skill in the art to make and use the invention. For claim construction purposes, the patent specification may act as a sort of dictionary, which explains the invention and may define terms used in the claim." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (in banc), *aff'd*, 517 U.S. 370 (1996). "[I]t is the single best guide to the meaning of a disputed term." *Bell Atl. Network Svcs., Inc. v. Covad Communications Group, Inc.,* 262 F.3d 1258, 1268 (Fed. Cir. 2001).

To fully appreciate what the inventor intended to cover by the patent, it is important to understand that the coolant system described in the patent specification *does not contemplate switching tools.* While the concept of switching tools found its way into lawyer argument extrinsic to the patent document, the invention described and claimed in patent document itself does not contemplate switching tools. Rather, the same tool arrangement is used during the entire machining operation. This is evident from a careful reading of the patent specification.

The patent specification describes a coolant system that regulates "the amount of coolant flow to a cutting tool in order to compensate for variations in coolant flow requirements." (Request for Judicial Notice, Exh. A, col. 1, lines 52-55). However, these variations in coolant

LAS99 1407940-3.064823.0020
LAS99 1411366-1.064823.0020

flow requirements are not caused by changing tools during operation. Instead, "[t]hese variations are caused by orifices that may be valve closed, the position of the tool relative to the surface, etc., machines being on or off, temperature, etc." (Request for Judicial Notice, Exh. A, col. 1, lines 56-58)[5].

This particular aspect of the coolant system is not insignificant. It clearly demonstrates what the inventor meant when he described and claimed a computer that determines the speed of a pump motor based on *both* "the coolant pressure" and the "flow area of the [tool] orifice means." In particular, the inventor clearly intended that "coolant pressure" and "flow area of the [tool] orifice" would not be one in the same because, in the patent specification, these two inputs to the computer are unrelated. In the coolant system described in the patent specification, the flow area of the tool orifice(s) *remains fixed*, and changes in coolant pressure are caused by the opening and closing of orifice valves, the position of the tool relative to the surface, the temperature, etc. Thus, there can be no question that, as far as the patent specification is concerned, the "coolant pressure" and the "flow area of the [tool] orifice" are two separate and distinct inputs that must be used by the computer to determine the speed of the pump motor. This interpretation is the right one because it remains true to the claim language and is most naturally aligned with the patent's description of the invention. *See Renishaw, PLC v. Marposs Societa per Azioni*, 158 F.2d 1243, 1250 (Fed. Cir. 1998).

This does not mean that claims cannot cover an accused product that changes tools during operation. As long as the accused product determines the speed of a pump motor based on both parameters, the "coolant pressure" and the "flow area of the [tool] orifice", it will satisfy this claim limitation. However, in this type of product, the orifice diameter(s) for each tool switched into the accused product must be provided to the computer on a real-time basis so that the speed of the pump motor can be adjusted to maintain a constant coolant pressure under the new operating conditions. For example, if the accused product switches from a tool with a 2 $mm^2$ orifice diameter to a tool with a 3 $mm^2$ orifice diameter during the middle of a machine tool operation, data must be provided to the computer indicating that a tooling change has occurred and the orifice diameter for the new tool is 3 $mm^2$. The computer then uses this data along with

---

[5] Request for Judicial Notice under Rule 201, F.R.E. ("Request for Judicial Notice"), Docket No. 14, filed February 24, 2005.

the feedback signal from the pressure transducer to adjust the speed of the pump motor. An accused product that operates in this fashion will satisfy this claim limitation. However, as described above, the accused products simply and indisputably do not operate in this fashion.

### D. The Court's Failure To Consider A Key Limitation In the Claims Constitutes A Clear Error Of Law

In its June 29, 2005 Order, the Court acknowledged the "all elements rule", noting that "every limitation that is set forth in a claim must be found in an accused product, exactly" in order to establish literal infringement. (Motion for Reconsideration, Exh. A, Transcript p.45:18-21)[6]. The Court then identified two limitations of the claims insofar as the computer is concerned. First, the computer must monitor the coolant pressure and be programmed with data related to the flow area of the tool orifice. Second, the computer must determine the speed of the pump motor based on coolant pressure and the flow area of the tool orifice. (*Id.* at p.47:15-20). These limitations impose two separate and distinct requirements on an accused product in order to infringe the claims.

The Court properly identified the "critical issue" as "whether or not as a matter of fact the defendant's product controls the speed of the pump based on both, emphasis on both, pressure and the flow area of the orifice." (*Id.* at p.48:18-22). Yet, the Court never again mentions this claim limitation in its Order. Instead, the Court analyzed the declarations offered by the parties and concluded that Mr. Adelman's declaration raises a genuine issue of material fact as to whether CoolJet programs information related to the flow area of the tool orifice. (*Id.* at p.50:10-13). Based on this reason alone, the Court denied CoolJet's motion for partial summary judgment.

The Court has failed to appreciate that (1) programming the computer with data related to the flow area of the tool orifice, and (2) determining the speed of the motor pump based on coolant pressure and the flow area of the tool orifice are two separate and distinct claim limitations. According to the Court:

---

[6] Transcript of Proceedings on CoolJet's Motion for Partial Summary Judgment of Noninfringement ("Transcript"), held before the Honorable Sean J. McLauglin on June 30, 2005, and attached as Exhibit A to CoolJet's Motion for Reconsideration or, in the Alternative, Clarification of the Court's June 29, 2005 Order filed concurrently herewith..

> [T]he critical issue in this case is whether or not as a matter of fact the defendant's product controls the speed of the pump based on both, emphasis on both, pressure and the flow area of the orifice. *Or as otherwise stated*, whether or not as a matter of fact in order for the defendant's system to function as it is designed, it is necessary that its computer be programmed with data related to the flow area of the orifice.

(*Id.* at p.47:19-48:1) (emphasis added).

This portion of the Order clearly demonstrates that the Court has overlooked a material portion of the claims. The fact that the computer in the accused product may be programmed with data related to the flow area of the orifice does not mean, *ipso facto*, that the speed of the pump motor is determined based on both the "coolant pressure" and the "flow area of the [tool] orifice." Even ChipBlaster recognizes that it must proffer probative evidence on how the speed of the pump motor is determined in order to survive summary judgment. That is why ChipBlaster's technical expert states in his declaration that "the CoolJet system receives a signal from the transducer that is directly related to the flow area of the orifice, and varies the drive frequency, to cause the motor to spin faster or slower . . . ." (*See* Adelman Decl., ¶ 14). Thus, ChipBlaster's entire defense to CoolJet's motion for partial summary judgment comes down to one issue: does this statement by Mr. Adelman raise a genuine issue of material fact as to whether or not the accused products determine the speed of the pump motor based on both the "coolant pressure" and the "flow area of the [tool] orifice?" When the claims are properly construed in accordance with their plain and ordinary meaning, in a manner consistent with the patent specification, it becomes quite clear that Mr. Adelman's statement does not. A claim limitation that requires a computer to determine the speed of a motor pump based on both "the coolant pressure" and the "flow area of the [tool] orifice" cannot be construed to mean a computer that determines the speed of a motor pump based on the coolant pressure alone, even if the coolant pressure is sensitive to changes in orifice diameter. Accordingly, CoolJet is entitled to summary judgment of noninfringement as a matter of law.

### E.    Doctrine of Equivalents Cannot Be Used To Eliminate An Express Limitation Of The Claim

The Federal Circuit's *en banc* decision in *Pennwalt Corp. v. Durand-Wayland,* 833 F.2d 931 (Fed. Cir. 1987) established that claims must be analyzed on an "element-by-element" basis under the doctrine of equivalents. Accordingly, once one concludes that a literally recited claim element is missing from an accused product, the doctrine of equivalence analysis looks to whether the accused device includes an equivalent of the recited claim element. This analysis proceeds for all of the recited claim elements which are not literally found in the accused device. If even one element of the claim cannot be found in the accused device, and the accused device has no equivalent, there can be no infringement even if the accused device as a whole performs substantially the same function in substantially the same way to achieve substantially the same result. *See Seachange International, Inc. v. C-Cor, Inc.*, 2005 U.S. App. LEXIS 12893 (Fed. Cir. June 29, 2005).

ChipBlaster's position in support of infringement under the doctrine of equivalents flies in the face of Federal Circuit law. It is premised entirely on conclusory attorney argument which asserts that "the CoolJet high pressure variable flow coolant systems are substantially the same thing as the variable volume coolant system of the [patent-in-suit], the CoolJet system is used in substantially the same way as the ChipBlaster system, and the CoolJet system achieves the same result as the ChipBlaster system." (Opposition Brief, p.15).[7] ChipBlaster's argument is legally irrelevant because it does not address the equivalency issue on an "element-by-element" basis, *Pennwalt,* and it is insufficient as a matter of law for lack of specificity. *PC Connector Solutions LLC v. SmartDisk Corp.,* 406 F.3d 1359, 1364 (Fed. Cir. 2005)(Lack of "particularized evidence" and "linking argument" on "insubstantiality of differences" between the claimed invention and the accused device or the "function/way/result" test of equivalence justifies affirmance of summary judgment of non-infringement).

To avoid summary judgment of noninfringement under the doctrine of equivalents, ChipBlaster must produce probative evidence that raises a genuine issue of material fact as whether or not there exists a computer input to the accused product that is (1) equivalent to the

---

[7] Plaintiffs' Memorandum In Opposition to Defendant's Motion for Partial Summary Judgment of Noninfringement ("Opposition Brief"), filed May 23, 2005.

-9-

flow area of the tool orifice, and (2) used in conjunction with the feedback signal from the pressure transducer to determine the speed of the pump motor. In this case, ChipBlaster has not even made the allegation, let alone submit probative evidence. The undisputed record does not show that the accused products determine the speed of the pump motor based on anything other than coolant pressure. Accordingly, CoolJet is entitled to summary judgment of noninfringement under the doctrine of equivalents as a matter of law.

### III.  CONCLUSION

The Court committed clear legal error in failing to properly construe the claim language and then ascertaining whether particularized evidence of all elements of the claim are found on the alleged infringing products. Accordingly, CoolJet's motion for reconsideration should be granted, and the Court should find as a matter of law that the accused products do not infringe the patent-in-suit, either literally or under the doctrine of equivalents. Should the Court deny CoolJet's motion for reconsideration, CoolJet respectfully submits that the Court should clarify the June 29, 2005 Order by construing the claim language.

Respectfully submitted,

Dated:   July 21, 2005            By: s/Leland P. Schermer
                                  Craig A. Gelfound, Esq.
                                  McDermott Will & Emery LLP
                                  2049 Century Park East, 34th Floor
                                  Los Angeles, CA  90067-3208
                                  310 277-4110
                                  310 277-4730 (Fax)

                                  Leland P. Schermer, Esq.
                                  Pa. I.D. No. 47283
                                  LELAND SCHERMER & ASSOCIATES, P.C.
                                  11 Stanwix Street, 7th Floor
                                  Pittsburgh, PA  15222
                                  (412) 642-5000
                                  (412) 642-5010 (Fax)
                                  lschermer@schermerlaw.com

                                  Attorneys for Defendant/Counterclaimant
                                  MIKE KENNEY TOOL, INC.,
                                  D/B/A COOLJET SYSTEMS

LAS99 1407940-3.064823.0020
LAS99 1411366-1.064823.0020